**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-00789-RM

LYLE N. ROSE,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

      This matter is before the Court on Plaintiff Lyle N. Rose's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)  Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") respectively under Titles II and XVI of the Social Security Act ("Act").  An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

      Defendant provided the Court with the administrative record.  (ECF Nos. 9; 9-1; 9-2; 9-3; 9-4; 9-5; 9-6; 9-7; 9-8.)  Plaintiff filed an opening brief to which Defendant responded.  (ECF Nos. 12; 15.)  Plaintiff did not file a reply brief in support of its Complaint within the time permitted and did not seek an extension of time in which to file such brief.  (*See generally* ECF; ECF No. 11.)

For the reasons set forth below, the Court affirms Defendant's denial of Plaintiff's DIB and SSI applications.

## I.     BACKGROUND

Plaintiff applied for DIB and SSI in January 2010, alleging he was disabled as of August 1, 2007, due to the following conditions that limit his ability to work:  anxiety, depression, and post-traumatic stress disorder ("PTSD").  (Admin. R. ("Tr.") 92, 226-41, 286.)  After Plaintiff's applications were initially denied, Plaintiff requested a hearing before an ALJ.  (Tr. 130-40.)  In September 2011, an ALJ denied Plaintiff's applications.  (Tr. 104-121.)  Plaintiff requested review of the ALJ's decision and, in May 2012, the Appeals Council granted Plaintiff's request for review and remanded the matter to an ALJ for further consideration.  (Tr. 122-26.)  In October 2012, ALJ William Musseman denied Plaintiff's applications.  (Tr. 8-30.)  That is the decision before the Court.  Plaintiff requested review of the ALJ's decision, and in January 2014, the Appeals Council denied such request.  (Tr. 1-7.)  Plaintiff timely requested judicial review before the Court.

### A.     Background and Relevant Medical Evidence

Plaintiff was born in 1968.  (Tr. 226.)  Plaintiff completed high school.  (*See* Tr. 287.) Plaintiff's past relevant work history, as referenced in the Dictionary of Occupational Titles, includes:  tow-truck operator; construction flagger; cook; cashier; and maintenance worker.  (Tr. 46.)

Plaintiff claims he became disabled on August 1, 2007 due to a combination of mental health impairments.  (Tr. 226, 286.)

1.   <u>Plaintiff's Medical Records</u>

In February 2004, Gen Numaguchi, psychologist, evaluated Plaintiff for anxiety.  (Tr. 441.)  Dr. Numaguchi diagnosed Plaintiff as having a panic disorder with agoraphobia and dysthymic disorder.  (Tr. 443.)  Dr. Numaguchi assigned Plaintiff a global assessment of functioning ("GAF") score of 45.  (Tr. 443.)

In August 2007, Misha Capler, a licensed clinical social worker ("LCSW"), diagnosed Plaintiff with panic disorder, agoraphobia, and dysthymic disorder.  (Tr. 452.)  Capler assigned Plaintiff a GAF score of 49.  Also in August 2007, Kim McFarlane, a physician's assistant ("PA"), prescribed Plaintiff Zoloft.  (Tr. 433.)  In 2007, Plaintiff participated in a social event while using Xanax.  (Tr. 430.)   Both Capler and McFarlane are associated with the Green River Medical Center.  (*See* Tr. 392-452.)

In January 2008, McFarlane increased Plaintiff's Zoloft dosage and prescribed Plaintiff Lorazepam.  (Tr. 430.)  Plaintiff reported to McFarlane that he had been unable to go outside.  (Tr. 430.)  In March 2008, Plaintiff reported to McFarlane that he was sleeping well, able to go outside, work in the yard, and take walks.  (Tr. 431.)  In April 2008, Plaintiff reported to McFarlane that he had purchased a motorcycle and was riding it; but that he was not employed or placing himself in a social setting.  (Tr. 431.)  In August 2008, McFarlane examined Plaintiff for the purpose of Plaintiff's obtaining a medical certificate for a commercial driver's license.  (Tr. 417.)  McFarlane found that Plaintiff met the standards for a commercial driver's license but required periodic monitoring due to anxiety.  (Tr. 435-37.)  At that time, Plaintiff refused to see a psychotherapist.  (Tr. 419.)

In February 2009, Ron Day, a LCSW, assessed Plaintiff.  (Tr. 423.)  Day assigned Plaintiff a GAF score of 50.  (Tr. 424.)  Also in February 2009, McFarlane prescribed Plaintiff

3

Celexa.  (Tr. 416.)  In April 2009, Plaintiff reported to Day that he was "continuing to progress" with "fewer setbacks" and that he was "getting out more."  (Tr. 422.)

In March 2009, Plaintiff reported to Day that he was feeling better and that he was getting out more.  (Tr. 426.)  Day noted that Plaintiff made good eye contact and was more expressive.  (Tr. 426.)  In March 2009, Plaintiff reported to McFarlane that his depression and anxiety were "manageable."  (Tr. 411.)

In November 2009, Day wrote a letter to Plaintiff's attorney that he had seen Plaintiff in weekly sessions for approximately four months.  (Tr. 390-91.)  Day opined that Plaintiff was unable to find or maintain employment due to his severe social phobia.  (Tr. 390-91.)

In April 2010, Day completed (and Dr. Numaguchi co-signed) a "psychiatric/psychological impairment questionnaire," in which he assessed Plaintiff was markedly limited in most areas of social interactions, in the ability to complete a normal workweek without interruptions, and in the ability to respond appropriately to changes in the work setting.  (Tr. 478-85.)  Day opined that Plaintiff would likely miss two to three workdays a month due to his symptoms.  (Tr. 484-85.)

In July 2011, Steve Volman, psychologist, conducted a consultative examination of Plaintiff.  (Tr. 494-99.)  Dr. Volman reviewed "a series of medical notes spanning approximately March 2010 back to 2007 from the Green River Medical Center."  (Tr. 494.)  Dr. Volman found Plaintiff to have a depressed mood and fair eye contact but that Plaintiff was reasonably articulate, displayed no evidence of a decrease in quantity of thought or looseness of association, and could respond to questions.  (Tr. 497.)  Dr. Volman found Plaintiff's concentration to be slightly impaired but his attention was adequate.  (Tr. 497.)  Dr. Volman diagnosed Plaintiff with social phobia and dysthymic disorder.  (Tr. 498.)  Dr. Volman assigned Plaintiff a GAF score of

4

59.  (Tr. 498.)  Dr. Volman completed a "medical source statement of ability to do work-related activities (mental)."  (Tr. 491-93.)  Dr. Volman found that Plaintiff had an "extreme" limitation in the ability to interact appropriately with the public; "marked" limitation in the ability to interact with supervisors and with co-workers; and "moderate" limitation in the ability to understand, remember, and carry out complex instructions, and in the ability to make judgments on complex work-related decisions.  (Tr. 491-92.)

In June 2012, Korrey Klein, M.D., treated Plaintiff.  (Tr. 507.)  Dr. Klein examined Plaintiff and determined that Plaintiff had normal mood, affect, thought processes, speech, judgment, and was appropriately dressed.  (Tr. 507.)  Dr. Klein found Plaintiff to be visibly anxious when describing social situations.  (Tr. 507.)  Dr. Klein prescribed Plaintiff Xanax.  (Tr. 508.)  In July 2012, Plaintiff reported to Dr. Klein that Xanax was helping his anxiety but that he was not interested in a daily medication for anxiety.  (Tr. 505.)  In August 2012, Dr. Klein completed a "psychiatric/psychological impairment questionnaire" in which he noted that he had been treating Plaintiff for four months.  (Tr. 519-26, 519.)  Dr. Klein found Plaintiff had a "marked" limitation in the ability to sustain a routine without supervision, interact with the public, and travel to unfamiliar places or use public transportation.  (Tr. 522-24.)  Dr. Klein further opined that Plaintiff would need to miss two to three days per month of work due to his impairments.  (Tr. 526.)

2.    Hearing Testimony

At the September 2012 hearing, Plaintiff testified he was unable to work.  (Tr. 37.)  Plaintiff testified that he was only able to perform work in the past because he worked with his wife.  (Tr. 37.)  Plaintiff testified that he had panic attacks when he was in public.  (Tr. 38.)  Plaintiff testified that he had headaches which were not controlled by medication.  (Tr. 39.)

5

Plaintiff testified that he had anger outbursts, emotional breakdowns, and suicidal thoughts.  (Tr. 40.)  Plaintiff testified that he did not see a psychiatrist or therapist because those providers did not let his family attend treatment sessions with him.  (Tr. 41.)

Plaintiff's wife testified that Plaintiff never left the house alone and that she worked with Plaintiff at Plaintiff's previous jobs.  (Tr. 44.)

### B.      The ALJ's Decision

On October 1, 2012, ALJ Musseman issued his decision in this matter denying Plaintiff DIB and SSI.  (Tr. 8-30.)  In reaching his decision, ALJ Musseman followed the five-step sequential evaluation process for evaluating disability claims.  (Tr.  14-28.)  ALJ Musseman found that Plaintiff has met the disability insured status of the Act through December 31, 2012 and has not engaged in substantial gainful activity since August 1, 2007, the alleged onset date.  (Tr. 14.)  ALJ Musseman found that Plaintiff has the following severe impairments:  social phobia and dysthymic disorder.  (Tr. 14-15.)  ALJ Musseman found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations, specifically considering Listings 12.04 and 12.06.  (Tr. 15-17.)  ALJ Musseman found Plaintiff's residual functional capacity ("RFC") to be as follows:  "to perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant cannot perform complex tasks, defined as having an svp of 2 or less; can occasionally deal with co-workers; cannot deal with the general public; and can tolerate only minimal supervision."  (Tr. 17-23.)  ALJ Musseman found that Plaintiff has past relevant work and that he is able to perform such work.  (Tr. 23-25.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Musseman's hypotheticals and in consideration of Plaintiff's age, education, and work

experience, ALJ Musseman further found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including: production assembly and industrial cleaning.  (Tr. 23-25.)

Therefore, ALJ Musseman concluded that Plaintiff was not disabled.  (Tr. 25.)

### C.      Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter.  (Tr. 7.)  On January 16, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6.)  Plaintiff appeals that decision by bringing this lawsuit.  (ECF No. 1.)

## II.    LEGAL STANDARDS[1]

### A.      Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Id.*  "It requires more than a scintilla, but less than preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d

---

[1] Many C.F.R. citations are to part 404—which addresses DIB claims.  All cited regulations have parallel citations in part 416—which addresses SSI claims.

1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues."  *Id.* at 479-480 (citations omitted).  This duty exists even when the claimant is represented by counsel.  *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

## B.     Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act.  42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  In addition, the individual's disability must have begun before his or her disability-insured status has expired.  20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics.  42 U.S.C. § 1382(c)(1).  In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act.  42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability.  *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis).  If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii).  Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii).  If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step.  Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past."  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  If the claimant is able to perform his or her previous work, he or she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  Fifth, the Commissioner must demonstrate:  (1) that based on the claimant's residual functional capacity

("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the

work that the claimant can perform is available in significant numbers in the national economy.

*Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g),

416.920(a)(4)(v).

## III.   ANALYSIS

Plaintiff raises numerous issues for the Court's consideration[2], including that:  (1) the

ALJ's RFC determination is not based upon substantial evidence and is not free from legal error,

specifically that the ALJ erred in his assessment of certain medical opinions (ECF No. 12 at 15-

23); and (2) the ALJ failed to assess properly Plaintiff and his wife's[3] credibility (ECF No. 12 at

23-28).  With respect to the first issue, the RFC determination, Plaintiff fails to argue with

specificity how the RFC determination should be different.  Plaintiff does not explain how the

RFC conflicts with a medical source opinion.  Rather, Plaintiff's argument as to the RFC

determination is merely a criticism of the ALJ's assigning little weight to the medical opinions.

Because the Court finds (1) no legal error in the ALJ's assessment regarding the

complained of medical opinions and therefore, substantial evidence supports the ALJ's RFC

determination; and (2) substantial evidence supports the ALJ's credibility determinations

regarding Plaintiff, the Court AFFIRMS Defendant's decision.

---

[2] The Court considers only those issues adequately raised in Plaintiff's opening brief.  *Wall*, 561 F.3d at 1066-67.
Specifically, the Court finds Plaintiff waived any argument as to Plaintiff's physical impairments; that the ALJ
relied upon Plaintiff's failure to pursue treatment as a basis to find that Plaintiff is not disabled (though the Court
will consider the ALJ's analysis of Plaintiff's failure to pursue treatment in finding Plaintiff not credible); that the
ALJ erred in relying on progress or treatment notes to determine Plaintiff's RFC; or that Plaintiff meets or medically
equals a listing. The Court does not reach any issue not raised by Plaintiff nor does the Court act as Plaintiff's
advocate.
[3] Although phrased as an issue for Plaintiff's appeal, Plaintiff does not pursue any argument in relation to the ALJ's
finding Plaintiff's wife not credible.  (*See generally* ECF No. 12.)  Thus, this issue is waived.

**A.     The ALJ Did Not Commit Reversible Error in Giving Little Weight to Certain Medical Providers' Opinions and thus, Substantial Evidence Supports the ALJ's RFC Determination.**

The ALJ is required to weigh every relevant medical opinion he or she receives.  *See* 20 C.F.R. §§ 404.1527(c)-(d); *Watkins*, 350 F.3d at 1301 (citation omitted); *see* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ must explain why a medical opinion was not adopted).  "It is the ALJ's duty to give consideration to all the medical opinions in the record."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 927(c)); *see also Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009) (unpublished) (holding that "an ALJ must consider the opinion of every medical source and provide specific, legitimate reasons for rejecting it"); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); SSR 96-5p, 1996 WL 374183, at * 1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored").  The ALJ "must also discuss the weight he assigns to such opinions."  *Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii)).  "[W]hen deciding what weight to assign to an opinion, an ALJ must consider the factors set forth at 20 C.F.R. []§ 404.1527(d). . . ."  *Lauxman*, 321 F. App'x at 769; *see also Wade v. Astrue*, 268 F. App'x. 704, 706 (10th Cir. Jan. 23, 2008) (unpublished).  "The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Medical opinions are defined as "'statements from physicians and psychologists or other acceptable medical sources[4] that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'" *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1156 (D. Kan. 2011) (citing 20 C.F.R. § 404.1527(a)(2)).   Medical opinions may not be ignored and all medical opinions must be evaluated by Defendant in accordance with factors contained in the regulations.   *Id.* (citing 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183, at *2-3 (July 2, 1996)).   Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.   *Watkins*, 350 F.3d at 1301 (citation omitted); 20

---

[4] Acceptable medical sources are: "Licensed physicians (medical or osteopathic doctors)"; "Licensed or certified psychologists"; "Licensed optometrists, for the measurement of visual acuity and visual fields"; "Licensed podiatrists, for purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle"; and "Qualified speech-language pathologists, for purposes of establishing speech or language impairments only."  SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 6, 2006).   Nonacceptable sources, as defined in 20 CFR §§ 404.1513(d) and 416.913(d), include, but are not limited to: "Medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists"; and "Non-medical Sources".  SSR 06-03p, 2006 WL 2329939, at *2.   "Opinions from non-physicians . . should . . . be weighed by the ALJ according to the same factors applicable to opinions from acceptable medical sources.  *McDonald v. Astrue*, 492 F. App'x 875, 882 (10th Cir. 2012) (unpublished) (citing *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007)).  This requires that their opinions be considered and weighed using the factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c).  Thus, even when a provider is not an acceptable medical source, the ALJ is "still required to explain the amount of weight he gave to the opinions. . . ."  *Keyes-Zachary*, 695 F.3d at 1163 (citing SSR 06-03p, 2006 WL 2329939, at *2-4 (2006) (all relevant information must be considered, including evidence from medical sources who are not acceptable medical sources; "information from such sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function" and may at times outweigh the opinion of an acceptable medical source)).   "In the case of a nonacceptable medical source. . ., the ALJ's decision is sufficient if it permits [the court] to 'follow the adjudicator's reasoning.'"  *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06–03p, 2006 WL 2329939, at *6).

C.F.R. §§ 404.1527(d)(2-6).  As to non-treating acceptable medical sources, the ALJ is still required to consider their opinions and to provide specific, legitimate reasons for rejecting it. *Doyal*, 331 F.3d at 764; SSR 96-5p, 1996 WL 374183, at *1.  Although the ALJ need not discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2008), he "must be 'sufficiently specific' to permit meaningful" review.  *Guilano v. Colvin*, 577 F. App'x 859, 861-62 (10th Cir. 2014) (unpublished) (citation omitted).  An ALJ may not reject certain medical opinions on the presumption that those providers were paid for the report or obtained at the request of a claimant's attorney.  *See Crowder v. Colvin*, 561 F. App'x, 740, 743 (10th Cir. 2014) (unpublished) (citation omitted).

In this matter, the ALJ gave "little weight" to the opinions of Day, Dr. Numaguchi, Dr. Volman, and Dr. Klein.  (Tr. 22-23.)  Plaintiff takes issue with the ALJ's assigning "little weight" to each of those opinions and in the ALJ's reasoning as to why he assigned little weight to each of those opinions.  (ECF No. 12 at 16-23.)  In essence, Plaintiff argues that the ALJ assigned "no weight to any of [the complained of] opinions."  (ECF No. 12 at 17.)  And the Plaintiff argues that the ALJ "endorsed a mental RFC finding that comports with the opinion of no medical source of record."  (ECF No. 12 at 17.)  But the RFC need not match a medical source's opinion.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ found that

[t]he [Plaintiff's] treatment history demonstrates that the [Plaintiff] has significant social anxiety.  However, this history does not support his allegations of disabling symptoms.  While the [Plaintiff] was undergoing treatment, he appears to have made dramatic improvement.  In 2008-2009, the [Plaintiff] demonstrated significant improvement in his ability to socially function while taking medications and undergoing therapy.  The [Plaintiff] went from being unable to

leave his house, to working in his yard, going to a back-to-school night[5], riding his motorcycle, and looking for work.  When compliant with his treatment regiment, the [Plaintiff] was noted to be expressive and open, with good eye contact.  Similarly, after establishing care with [Dr. Klein] in May 2012, and being prescribed Xanax, he reported improvement in his symptoms, and his mental status exams were normal.  Thus, it appears that when the [Plaintiff] obtains treatment and follows treatment plans, his condition significantly improves.

(Tr. 20.)

The ALJ found that

[w]hile there are numerous inconsistencies in between the claimant's allegations and the evidence, there is certainly enough evidence in support of the [Plaintiff's] allegations to conclude that he would not exceed [sic] in a job that requires him to interact with the public.  Accordingly, he should be limited to work that does not require dealing with the general public.  He appears to have less problems interacting with those with whom he has established a rapport, as evidenced by his fairly normal mental status exams with his therapist in 2009.  Thus, he should be able to manage at least occasional interaction with co-workers, and tolerate at least minimal supervision.  However, the evidence simply does not support more restrictive limitations in social functioning.

(Tr. 21.)

The ALJ found that although Plaintiff "asserts that his social anxiety is a lifelong condition [] . . . [] he was able to perform work exceeding SGA levels many times during his life."  (Tr. 21.)  Specifically, the Plaintiff worked as a flagger and as a cashier.  (Tr. 21.)  Thus, the ALJ concluded that Plaintiff's "work history is not consistent with the [Plaintiff's] allegations of severe social anxiety."  (Tr. 21.)

For the reasons stated previously and below, the ALJ did not commit reversible error in assigning the complained of medical opinions little weight and thus, substantial evidence supports the ALJ's RFC determination.

---

[5] The ALJ's citation to the record for this proposition (Tr. 18 (citing Tr. 432)) does not bear out that Plaintiff actually attended a back-to-school night.  (Tr. 432 ("Extensive discussion on controlled exposure to people and stressful environments with goal to be able to attend back to school night.").)

1.     Day and Dr. Numaguchi's Opinions

The ALJ gave little weight to the opinions of Dr. Numaguchi and Day (Tr. 478-85).  (Tr. 22.)  Day (not an acceptable medical source) and Dr. Numaguchi's (an acceptable medical source),  SSR 06-03p, 2006 WL 2329939, at *1-2, opinions are subject to the same analysis.  *McDonald*, 492 F. App'x at 882 (citation omitted).   That is, the ALJ must be sufficiently specific as to the reasons for assigning their opinions little weight.  *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06–03p, 2006 WL 2329939, at *6).  The ALJ stated that he assigned little weight to their opinions because they

> are not consistent with the [Plaintiff's] overall treatment history, his work history, or his mental status exam findings. . . . [T]he opinions do not appear consistent even with these providers' own records. . . .  Furthermore, the [ALJ] notes that a statement that one is unable to work — i.e. that he is disabled — is a medical-vocational determination reserved for the Commissioner.

(Tr. 22.)  The ALJ's decision comports with the Tenth Circuit Court of Appeal's holding in *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding an ALJ's listing of factors he considered was inadequate when the court was "left to speculate what specific evidence led the ALJ to [his conclusion]").  In contrast to both *Kepler*, the Court is able to follow the ALJ's reasoning for why he afforded Day and Dr. Numaguchi's opinions little weight because it is stated in reference to those portions of the record which support the ALJ's assessment.  (*See* Tr. 22 ("[T]he [Plaintiff] appeared to have good eye contact and reported engaging in a wide array of activities when treating with [Day] in 2009, as discussed [previously].")

Specifically, the ALJ's reliance on Plaintiff's overall treatment history and the providers' medical records as substantiating his RFC determination is well-placed.  The ALJ did not selectively apply the evidence on this issue.  The ALJ cited evidence in support of a finding of nondisability, *i.e.*, that Plaintiff reported feeling better; he made good eye contact and was more

expressive; and he and his wife were getting out more.  (Tr. 22, 422, 426.)  The ALJ

acknowledged evidence in other parts of the record which indicate that Plaintiff "still had severe

anxiety and feared leaving his house unaccompanied." (Tr. 18 (citing Tr. 447).)  Thus, the ALJ

did not violate the rule that he may not "pick and choose from a medical report, using only those

parts favorable to a finding of nondisability."  *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th

Cir. 2004); *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton,* 79 F.3d

at 1009-10.  The ALJ discussed how he resolved these apparent inconsistencies in the treatment

progress notes.    (Tr. 21 ("While there are numerous inconsistencies in between the claimant's

allegations and the evidence, there is certainly enough evidence in support of the claimant's

allegations to conclude that he would not exceed [sic] in a job that requires him to interact with

the public.  Accordingly, he should be limited to work that does not require dealing with the

general public.").)

As to the Mental Status Examinations ("MSEs"), the ALJ stated that "after establishing

care with [Western Valley Family Medical Practice and Dr. Korrey Klein] WVFMP in May

2012 and being prescribed Xanax . . . his mental status exams were normal." (Tr. 20.)  Contrary

to Plaintiff's argument, the ALJ discussed other MSEs.  The ALJ acknowledge Capler's MSE

which revealed Plaintiff had a depressed mood and agoraphobia.  (Tr. 18 (citing Tr. 451).)  And

the ALJ acknowledged Dr. Volman's MSE which revealed Plaintiff had a depressed mood; short

period of anxiety; and slightly impaired concentration.  (Tr. 19-20 (citing Tr. 497-98).)

Plaintiff argues, in essence, that the ALJ considered the wrong evidence when

determining whether Plaintiff's treatment history comports with Day and Dr. Numaguchi's

opinions.  The Court may not reweigh the evidence and the Court is satisfied that the ALJ gave

the relevant material due consideration.  *See Andersen v. Astrue*, 319 F. App'x 712, 721-22 (10th Cir. 2009) (unpublished).

As to the fact that Dr. Numaguchi and Day gave an opinion as to whether Plaintiff is disabled; the ALJ did not ignore the opinions but merely gave them little weight.  SSR 96-5p, 1996 WL 374183, at * 1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored")).

For all the above stated reasons, the ALJ did not commit legal error in assigning little weight to Day and Dr. Numaguchi's opinions.

2.      Dr. Volman's Opinion

The ALJ gave "little weight" to Dr. Volman's opinion.  (Tr. 22-23.)  Dr. Volman opined that Plaintiff "had an extreme limitation in dealing with the public, marked limitations interacting with supervisors and co-workers, and moderate limitations remembering, carrying out and making judgments on complex instructions and work related decisions."  (Tr. 22 (citing Tr. 491-92).)  The ALJ's reason for assigning Dr. Volman's opinion little weight is because

> Dr. Volman did not appear to review any pertinent records.  His understanding of the [Plaintiff's] treatment history and prior mental status exam findings came exclusively from the claimant, who is not entirely credible for reasons set forth above.  The opinion is not consistent with the claimant's treatment or work history.

(Tr. 22-23.)

The first reason asserted by the ALJ, *i.e.*, "Dr. Volman did not appear to review any pertinent records," is not supported by substantial evidence in the record.  (Tr. 494 ("Also [considered by Dr. Volman] in [creating] this report, were a series of medical notes spanning approximately March 2010 back to 2007 from the Green River Medical Center.").)  Defendant concedes this point but argues such error was harmless as the ALJ identified other valid reasons

17

for his assigning little weight to Dr. Volman's opinion. (ECF No. 15 at 17-20.) The Court agrees that the ALJ provided other valid reasons for assigning little weight to Dr. Volman's opinion, thus, such error was harmless. *See Lax*, 489 F.3d at 1088.

Defendant argues that "Dr. Volman's opinion was inconsistent with the longitudinal medical record as a whole, which showed that Plaintiff's mental condition stabilized when he took his psychotropic medications as directed." (ECF No. 15 at 19.) The ALJ stated that Dr. Volman's opinion is "not consistent with the [Plaintiff's] treatment history." (Tr. 23.) The ALJ's discussion as to how Dr. Volman's opinion is not consistent with Plaintiff's treatment history is legally sufficient. That is, although not identified in specific relation to Dr. Volman's opinion, reference to Plaintiff's treatment and work history is sufficiently specific elsewhere in the ALJ's decision. (*See* Tr. 20-21.) The Court must "exercise common sense" in reviewing the ALJ's decision and must not "insist on technical perfection." *Keyes-Zachary*, 695 F.3d at 1166. Because the Court can follow the ALJ's reasoning in conducting its review and can determine that the correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. *See id*.

For all the above stated reasons, the ALJ did not commit legal error in assigning little weight to Dr. Volman's opinion.

### 3. Dr. Klein's Opinion

The ALJ gave "little weight" to Dr. Klein's opinion. (Tr. 23.) Dr. Klein opined that Plaintiff "had marked limitations in the ability to sustain a routine without supervision, interact with the general public, and travel to unfamiliar places using public transportation, and would miss 2-3 days per month from work due to his impairment." (Tr. 23 (citing Tr. 518-26).) The ALJ gave little weight to Dr. Klein's opinion because he is not a mental health specialist; he had

only seen Plaintiff twice; and the opinion is not consistent with Plaintiff's mental status exams. (Tr. 23.)   The ALJ permissibly discounted Dr. Klein's opinion for the above stated reasons.   *See* 20 C.F.R. § 404.1527(c)(5) (generally, more weight is given to a specialist about medical issues related to his speciality than to the opinion of a source who is not a specialist); 20 C.F.R. § 404.1527(c)(2)(i) (generally, more weight is given to a treating source the longer a treating source has treated the claimant and the more times the claimant has been seen by the treating source); 20 C.F.R. §§ 404.1527(c)(3)-(4); *see also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (holding that the ALJ reasonably discounted a treating physician's opinion which was inconsistent with other medical evidence).

For all the above stated reasons, the ALJ did not commit legal error in assigning little weight to Dr. Klein's opinion.

**B.     The ALJ's Credibility Determination is Supported by Substantial Evidence and Free From Legal Error**

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation and citation omitted).   "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted).   The ALJ must set forth specific medical and non-medical evidence relied on in determining the claimant's subjective complaints not credible.   *Kepler* does not require a formalistic factor-by-factor recitation of the evidence.   *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).   So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.   *Qualls v. Apfel*, 206 F.3d 1368,

1372 (10th Cir. 2000).  Inconsistencies are a reasonable basis upon which to find a claimant not credible.  *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).

The factors that should be considered, in addition to the objective medical evidence, when assessing a claimant's credibility include:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medications, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 347186, at *3 (July 2, 1996).

In assessing credibility, the ALJ properly considered the consistency of nonmedical testimony with objective medical evidence.  *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (citation omitted); SSR 96-7p (July 2, 1996), 1996 WL 374186 at *5-6.

Plaintiff argues that "none of the five identified reasons [by the ALJ for finding Plaintiff not credible] truly undermines his veracity."  (ECF No. 12 at 23.)

First, Plaintiff takes issue with the ALJ's selection of evidence in support of finding Plaintiff non-credible.  (ECF No. 12 at 23.)  Plaintiff, however, does not deny the evidence selected by the ALJ is accurate nor does the Plaintiff advocate that the ALJ omitted consideration of evidence in favor of a disabled finding.  (*See generally* ECF No. 12.)  Rather, Plaintiff advocates a different interpretation of the evidence.  (ECF No. 12 at 24 ("The ALJ's claim that Mr. Rose's condition meaningfully improved fails to consider the demonstrably short-

20

lived and partial nature of those improvements.").) "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The Court] may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt [may] justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (citation and quotation omitted). The ALJ permissibly found Plaintiff not credible because certain evidence does not support Plaintiff's alleged disability.

Second, Plaintiff takes issue with the ALJ's assessment of Plaintiff's credibility in relation to Plaintiff's obtaining mental health treatment. (ECF No. 12 at 24-26.) The ALJ must consider the Plaintiff's inability to pursue treatment in assessing credibility. *See* SSR 96-7p, 1996 WL 374186, *7-8 (1996). The ALJ must consider the failure to pursue treatment and the four factors relevant to same as set forth in *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). These include "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Id*. (internal quotation and citation omitted). The ALJ found that when Plaintiff was compliant with treatment, his mental conditions were not of a disabling severity[6], *i.e.*, medical treatment would restore Plaintiff's ability to work. (Tr. 20-21.) The ALJ found that such treatment was prescribed. (Tr. 18 (citing Tr. 452, 432.) The ALJ found that Plaintiff refused treatment. (Tr. 20.) And the ALJ found that Plaintiff's treatment refusal was without justifiable excuse. (Tr. 20.) Plaintiff argues that "he is unable to financially afford consistent mental health treatment and that the medications and

---

[6] Plaintiff waived the argument that the ALJ did not establish that the treatment would have restored Plaintiff's ability to work. With respect to this aspect of the ALJ's credibility analysis, Plaintiff only challenges whether he offered a persuasive explanation for his lack of consistent treatment. (ECF No. 12 at 24-26.)

therapy he had received were not very effective." (ECF No. 12 at 25 (citing Tr. 56, 60, 63).) A claimant's inability to afford treatment may constitute justifiable cause for failing to comply with prescribed treatment. *Thompson*, 987 F.2d at 1489-90. There should be evidence in the record, however, that supports such a claim. *See Atkinson v. Astrue*, 389 F. App'x 804, 809 (10th Cir. 2010) (holding that it is not a justifiable excuse where the claimant "provided no evidence that he 'sought to obtain any low-cost medical treatment' *or* that he has 'been denied medical care because of [his] financial condition'"). The ALJ considered Plaintiff's claim that he cannot "attend counseling or psychiatry sessions, because the state insurance program will not pay to have his wife escort him."[7] (Tr. 20.) Specifically, in the prior administrative hearing, ALJ Theodore W. Grippo explored the issue of Plaintiff's treatment program. (Tr. 59-61 (Plaintiff testified that he stopped mental health treatment "partially because of finances, your honor, and partially because [he] just felt like [he] was running into a brick wall."), 63 (Plaintiff testified that he stopped mental-health medications because he doesn't "have the finances to be able to get them, and nor do[es] [he] have a primary care physician here in town to do it.").) Further, Plaintiff admits that he has not tried a low or non-cost facility for mental health treatment. (*See* Tr. 63-64.) Plaintiff provides no argument that he has been denied mental health care because of his inability to afford such treatment. (*See* ECF No. 12.) Further, Plaintiff admits that one of the reasons he does not see a psychiatrist is because they ask him not to allow his family in. (Tr. 41.) For these reasons, the ALJ adequately considered whether Plaintiff's inability to afford mental-health treatment bears on his credibility assessment.

---

[7] The Court recognizes that this formulation of Plaintiff's inability to afford treatment is slightly different than if Plaintiff himself were not able to afford treatment. Even if the Court were to agree with Plaintiff's contention that the ALJ improperly analyzed Plaintiff's inability to afford treatment as it relates to Plaintiff's credibility, the ALJ set forth alternative reasons for finding Plaintiff not credible. And thus, substantial evidence (in the whole) supports the ALJ's credibility determination.

Third, Plaintiff takes issue with the ALJ's assessment of his credibility in relation to whether he presented to medical visits with or without his family members.  (ECF No. 12 at 26.)  The Court does not find that the ALJ used this evidence (or lack thereof) as a basis for finding Plaintiff not credible.  (*See* Tr. 20-21.)

Fourth, Plaintiff takes issue with the ALJ's assessment of his credibility in relation whether Plaintiff's social anxiety has been a lifelong condition.  (ECF No. 12 at 26-27.)   The ALJ identified that Plaintiff has claimed that his social anxiety is a lifelong condition (Tr. 21) and that it did not become worse with unemployment (which began in 2007) (Tr. 19, 58).  (*See* Tr. 507.)  The Court acknowledges that the ALJ did not address Dr. Volman's report that Plaintiff's anxiety had increased in the eight years prior to 2011 (Tr. 494).  (*See generally* Tr. 7-30.)  But substantial evidence indicates that Plaintiff's statement that his extreme social anxiety is a lifelong condition conflicts with other evidence such as his work history as a cashier (Tr. 21, 301) which is a permissible basis on which to find Plaintiff not credible.  20 C.F.R. § 404.1529(c)(4); *see also* SSR 96-7p, 1996 WL 374186, at *5; *see Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).  The Court may not reweigh this seemingly inconsistent evidence.  *Lax*, 489 F.3d at 1084.

Fifth, Plaintiff takes issue with the ALJ's assessment of his credibility in relation to Plaintiff's manner of working in the past.  (ECF No. 12 at 27-28.)  The Court is not persuaded that the ALJ impermissibly interpreted the testimony as Plaintiff argues.  Rather the ALJ affirmatively linked evidence in the matter, *i.e.*, Plaintiff's past work history as a flagger and a cashier while suffering from the anxiety impairment, to his credibility determination (Tr. 21).  *See Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008).

For the previously stated reasons, substantial evidence supports the ALJ's credibility determination.

## IV.    CONCLUSION

Based on the foregoing, the Court:

(1)    AFFIRMS Defendant's denial of disability insurance benefits and supplemental security income.

DATED this 18th day of February, 2016.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

24